UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JACOB D. SPARKS, | ) | CASE NO. 1:22-CV-00638 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHARLES E. FLEMING |
| vs. | ) | |
| | ) | |
| JUSTIN FITZHUGH, | ) | |
| | ) | |
| Defendant. | ) | OPINION |
| | ) | |

Pending before the Court is Nations Lending Corporation's ("NLC") Motion to Intervene (ECF No. 13). For the following reasons, the Motion is GRANTED.

## I. BACKGROUND

### A. Factual

On September 23, 2013, Plaintiff Jacob D. Sparks ("Plaintiff") and Defendant Justin Fitzhugh ("Defendant") (collectively "the Parties") entered into an Employment Agreement[1] (the "Agreement") with NLC. (ECF No. 13, Mot. at PageID# 205). Under the Agreement, NLC employed the Parties as "'Recruiters,' responsible for recruiting and procuring loan originators and branch offices in any state in which Nations Lending does business."[2] *Id*. After the first six months of employment, the Parties were collectively paid a set commission from loans closed by loan originators and branches they recruited for NLC. (*Id*. at PageID #205-06).[3] Those commissions were pooled and divided equally between the parties. *Id*.[4]

---

[1] See ECF No. 14, Employment Agreement at PageID #220-26.
[2] *Id*. at PageID #220.
[3] *Id*. at PageID #221.
[4] *Id*.

1

On March 1, 2017, Defendant provided Plaintiff with a proposed Addendum[5] to the Agreement (the "Addendum"), with a revised compensation split; Plaintiff would receive thirty-five percent and Defendant would receive sixty-five percent of their total pooled commissions. (ECF No. 6, First Am. Compl. at PageID #97). Plaintiff rejected the Addendum on April 17, 2017. *Id*. On February 26, 2018, Defendant resigned his employment with NLC. (*Id*.; ECF No. 13, Mot. at PageID# 206). On February 28, 2018, NLC terminated Plaintiff with a Termination Letter[6] (the "Letter") that states:

> "Effective as of February 26th, Justin Fitzhugh resigned his employment and terminated the Agreement of September 23, 2013 by and between you, Fitzhugh, and Nations Lending Corporation ("NLC"). This terminates your employment with NLC as of today."[7]

NLC argues Defendant's resignation triggered Plaintiff's termination and the provisions in Paragraph 14 of the Agreement. (ECF No. 13, Mot. at PageID# 206). Paragraph 14 states:

> "Upon termination of the employment of either Sparks and/or Fitzhugh, NLC shall collectively pay Recruiters the total of 25 basis points on the total loan volume of all non-brokered loans originated and closed by Recruits for a period of 24 months as follows: 25 basis points (or 0.0025) shall be multiplied by the total dollar loan volume of all non-brokered loans originated and closed by Recruits, and then divided equally and paid to Sparks and Fitzhugh. Payment(s) to Sparks and Fitzhugh after termination of their employment shall be made and treated on a 1099 basis, and Sparks and Fitzhugh shall each be solely responsible for any respective applicable taxes which might apply. However, this paragraph 14 shall be voided and neither Sparks nor Fitzhugh entitled to any further payment, compensation, commission or thing of value, if: (a) at any time during the 24 months following termination of employment, either Sparks or Fitzhugh engages in any activity in violation of paragraph 12 above [regarding restrictive covenants]."[8]

---

[5] See ECF No. 6-2, Addendum to Agreement at PageID #113-14.
[6] See ECF No. 14, Termination Letter at PageID #228.
[7] *Id*.
[8] ECF No. 14, Employment Agreement at PageID #224.

2

Plaintiff alleges that the Defendant's resignation was a "sham…constructed and executed, with NLC's knowledge, to extricate Fitzhugh and NLC from the Agreement so that those parties could renegotiate a new compensation structure without consideration of their contractual obligations to Sparks. Fitzhugh's sole motivation…was to supply NLC with a basis…to end its contractual relationship with Sparks." (ECF No. 6, First Am. Compl. at PageID #98). Plaintiff also alleges that his employment could not be terminated, unless triggered by a reason listed in Paragraph 15 of the Agreement, which provides:

> " This Agreement, and/or the employment of Sparks, or Fitzhugh cannot be terminated by NLC except for the following reasons:
>
> (a) Due to the willful misconduct of either Sparks, or Fitzhugh which is not corrected within thirty (30) days of both (i) a meeting in person with Recruiters, and NLC to specifically address such misconduct (ii) receipt of written notice of such misconduct by NLC to each Sparks and Fitzhugh;
>
> (b) If NLC receives official written notice from a regulatory or governmental authority within the mortgage industry that the employment of either Sparks or Fitzhugh is in direct violation of the law;
>
> (c) Sparks or Fitzhugh is convicted of a crime which will cause NLC to lose their approval with Fannie May, Freddie Mac, Ginnie Mae, or FHA lending authority;
>
> (d) Either Sparks or Fitzhugh are subject to a non-compete or other restrictive agreement as described in paragraph 4;
>
> (e) If either Sparks of Fitzhugh are convicted of a felony which would cause NLC to not be able to employ them pursuant to regulatory guidelines."[9]

---

[9] *Id*. at PageID #224-25.

B. **Procedural**

On February 17, 2022, Plaintiff filed a Complaint[10] against NLC in the Cuyahoga County Court of Common Pleas, asserting a breach of contract claim. (ECF No. 13, Mot. at PageID# 207). On February 24, 2022, Plaintiff filed a Complaint[11] against Defendant in the Cuyahoga Court of Common Pleas asserting breach of contract and breach of fiduciary duty claims. (Id.). Both Complaints allege that: (1) the Parties, along with NLC, entered into the Agreement, (2) NLC agreed to hire the Parties as recruiters, (3) on February 26, 2018, Defendant resigned from NLC, (4) on February 28, 2018, NLC terminated Plaintiff, and (5) that Defendant's resignation "had absolutely no impact on Sparks' contractual relationship" with NLC. (Id. at PageID #207-08).

On April 20, 2022, Defendant removed the case against him to this Court. (ECF No. 1, Notice of Removal). On May 18, 2022, Sparks filed his First Amended Complaint against Defendant asserting claims against Defendant for (1) breach of contract, (2) breach of fiduciary duty owed to partner or de facto partner, (3) tortious interference with contract, and (4) breach of fiduciary duty as joint venturer. (ECF No. 6, First Am. Compl. at PageID #99-102 ). On January 12, 2023, NLC filed its Motion to Intervene as a party (ECF No. 13) and filed supplemental exhibits on January 19, 2023 (ECF No. 14). On February 2, 2023, Defendant filed his Response to the Motion, indicating no objection (ECF No. 18, Def.'s Response at PageID #305), and Plaintiff filed his Opposition (ECF No. 19). On February 9, 2023, NLC filed its Reply in Support of the Motion. (ECF No. 20).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 24, a proposed party may intervene in two ways: intervention of right or permissive intervention. Intervention of right requires the Court to permit

---

[10] See ECF No. 14, *Sparks v. Nations Lending Corp.*, Case No. CV 22 959703.
[11] See ECF No. 14, *Sparks v. Fitzhugh*, Case No. CV 22 959954.

4

anyone to intervene who upon timely motion "(1) is given an unconditional right to intervene by a federal statute" or "(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent the interest." Fed. R. Civ. P. 24(a)(1)-(2). Permissive intervention allows the Court to permit anyone who "(1) is given a conditional right to intervene by a federal statute" or "(2) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)-(2).

"Regarding intervention of right, we have interpreted Rule 24(a) as establishing four elements, each of which must be satisfied before intervention as of right will be granted: '(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 471 (6th Cir. 2000); citing *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997); *see Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999) (same). Regarding permissive intervention, "so long as the motion for intervention is timely and there is at least one common question of law or fact, the balancing of undue delay, prejudice to the original parties, and any other relevant factors is reviewed for an abuse of discretion." *Glickman*, 226 F.3d. at 472.

"In the Sixth Circuit, the standard for intervention as a matter of right is lenient. An intervenor does not need the same standing to intervene as is required to initiate a lawsuit." *Zeeb Holdings, LLC v. Johnson*, 338 F.R.D. 373, 376 (N.D. Ohio 2021); *See Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991) (An intervenor need not have a "specific legal or equitable interest" to qualify for intervention under Rule 24(a)(2)); citing *Trbovich v. United Mine Workers*,

404 U.S. 528, 536-39, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)). "Rule 24 should be "broadly construed in favor of potential intervenors." *Glickman*, 226 F.3d. at 472.

### III. LAW AND ANALYSIS

A. **Intervention of Right**

    1. **NLC's Motion to Intervene was timely.**

Timeliness of a motion to intervene is a threshold issue. *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011); citing *NAACP v. New York,* 413 U.S. 345, 365, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973) ("Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is untimely, intervention must be denied. Thus, the court where the action is pending must first be satisfied as to timeliness."). The Sixth Circuit considers five factors when determining whether a motion to intervene is timely:

> "1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention." *Id*.

None of these factors are dispositive and "should be evaluated in the context of all relevant circumstances". *Glickman*, 226 F.3d at 472-73; *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990).

    a. **The lawsuit has not progressed far**.

In his Opposition, Plaintiff argues that the Motion is untimely because it was "made about one year after this lawsuit was filed." (ECF No. 19, Opp. at PageID #308). The Court disagrees. As NLC points out, and Plaintiff agrees, as of the filing date of the Motion, this lawsuit was still

6

in the pleading stage. (ECF No. 13, Mot. at PageID #209; ECF No. 19, Opp. at PageID #313). Thus, it has not progressed so far as to render the Motion untimely. *Glickman*, 226 F.3d at 475 (ruling a motion to intervene untimely because, at the time of filing, discovery was closed, experts were producing reports, and the court's previously-identified final disposition timeframe was approaching).

### b. NLC has a valid purpose for intervening.

Plaintiff argues that NLC's stated purpose of protecting both its contractual rights as a party to the Agreement and its interest in the interpretation of the Agreement is "clear as mud." (ECF No. 13, Mot. at PageID #209-10; ECF No. 19, Opp. at PageID #313). The Court disagrees. Plaintiff attempts to distinguish his claims against Defendant: (1) that he breached the Agreement, (2) that he violated fiduciary duties owed to Plaintiff by resigning, and (3) that he tortiously interfered in the Agreement by resigning, from his claim against NLC that it breached the Agreement by terminating him as a result of Defendant's resignation. (ECF No. 19, Opp. at PageID #313). Plaintiff argues that the Court's interpretation of whether the Agreement allowed Defendant to resign without breaching it, or breaching duties allegedly owed to Plaintiff, has no bearing on its interpretation of whether the Agreement allowed Defendant's resignation to trigger Plaintiff's termination. *Id*. These arguments are two sides of the same coin. The crux of the issues in both cases is interpreting the Agreement, and the duties created by same as to all parties to it. NLC does have a valid interest in the Court's interpretation of the Agreement; it directly impacts the effect of the Agreement regarding NLC's right to terminate the Plaintiff.

### c. NLC moved to intervene within an appropriate length of time after which it knew or should have known of its interest in the case.

NLC argues that it is not a party, nor did it receive notices about this lawsuit. NLC asserts it only became aware of its interest in this case upon learning of the disagreement between the Parties as to whether they "jointly contracted" with NLC.[12] (ECF No. 13, Mot. at PageID# 210). NLC states they only learned of this disagreement "by chance." *Id*. Plaintiff argues that because there was a fully briefed Motion to Dismiss (ECF No. 9) pending for approximately six months before NLC's Motion, it is untimely. (ECF No. 19, Opp. at PageID# 314). In so doing, Plaintiff conflates this factor with the first factor regarding substantial progress, and cites a Sixth Circuit decision where a motion to intervene filed nearly a year after removal was held untimely filed. *See Salem Pointe Capital, LLC v. BEP Rarity Bay, LLC*, 854 Fed.Appx. 688, 696 (6th Cir. 2021). However, the circumstances in *Salem Pointe* differ from those in this case. In that case, the Sixth Circuit found that of least importance is the measure of time between the complaint and the motion to intervene, and "what *does* matter is what steps occurred along the litigation continuum *during* this period of time. *Id*. at 695. The court held the motion was untimely because in that year, there was "extensive progress" and substantial motion practice including; cross-motions for summary judgment, a motion to dismiss counterclaims, a motion to consolidate, a previous motion for summary judgment, a motion to amend and file a countercomplaint, and a motion to strike or defer ruling. *Id*. at 696. We do not have such extensive progress in this case. It is also noteworthy that this analysis in *Salem Pointe* went to whether there was substantial progress in the lawsuit, not whether the potential intervenor filed the motion within an appropriate time after it knew or should of its interest in the case. *Id*.

As to the latter, the Sixth Circuit focuses on when the requesting party knew or should have known its interests were not adequately represented by the named parties. *Id*. at 698; quoting *Stotts*

*v. Memphis Fire Dept.*, 679 F.2d 579, 583 (6th Cir. 1982) ("a 'party must have been aware of the risk that his interest may be affected by the litigation and that his interest may not be fully protected by the existing litigants.'"). Plaintiff argues that NLC does not specify when it knew its interests would not be adequately represented by the Parties, but fails to argue that NLC's Motion was filed too long after the triggering point for this factor. (ECF No. 19, Mot. at PageID# 314). Plaintiff also does not argue that NLC inappropriately took the "wait and see" approach. *See Zelman*, 636 F.3d at 285-86 (motion to intervene is untimely when proposed intervenor has knowledge that their interest in a litigation will not be adequately protected and does not attempt to intervene.). On this record, the Court cannot find that NLC filed the motion to intervene an inappropriate amount of time after it knew or should have known of its interest in this case.

### d. The Parties will not be prejudiced by NLC's intervention.

Plaintiff argues that he will be prejudiced by NLC's intervention because he has a pending case against NLC in Cuyahoga County and therefore he will have to litigate both cases in different forums on the same issues. *Id*. Plaintiff ignores several key factors weighing against his argument. First, as NLC argues, regardless of whether NLC intervenes in this case, Plaintiff will be litigating the same issues: (1) whether Defendant's resignation triggered Plaintiff's termination under the Agreement, (2) whether the Parties jointly entered into the Agreement, and (3) what are the rights, duties, and obligations of the Parties and NLC under the Agreement. (See ECF No. 20, Rep. in Supp. at PageID# 364). Also, in the pending state litigation against NLC, the court granted NLC's motion to stay the case pending the outcome of this litigation.[13] *Id*. This tends to indicate that the state court, like this Court, is concerned about avoiding duplicative litigation, and is seeking to do so.

---

[13] *See Sparks v. Nations Lending Corp.*, Case No. CV 22 959703, Journal Entry No. 139753716 (February 17, 2033).

    **e. There are no unusual circumstances weighing against intervention.**

NLC argues that the potential for inconsistent rulings in the concurrent federal and state cases are unusual circumstances militating in favor of intervention. (ECF No . 13, Mot. at PageID # 210). Plaintiff does not address this argument in his Opposition and did not raise any argument that there are unusual circumstances militating against intervention. The Court finds this factor weighs in favor of timeliness. Accordingly, the Motion was timely.

    **2. NLC has a substantial legal interest in this case.**

Plaintiff argues that NLC has no substantial interest in the subject matter of this lawsuit. (ECF No. 19, Opp. at PageID #308). Plaintiff attempts to limit the scope of the subject matter of this case to "whether Justin Fitzhugh's resignation from NLC violates duties owed to Jacob Sparks." *Id*. However, this characterization ignores that in order to make such a determination, the Court must assess what the Parties *and* NLC's contractual rights and obligations are under the Agreement. The Court also finds persuasive NLC's argument that "protecting one's contractual rights is surely a substantial legal interest." (ECF No. 13, Mot. at PageID #213; quoting *Johnson*, 338 F.R.D. at 378).

    **3. Absent intervention, NLC's ability to protect its interests will be impaired.**

Plaintiff argues that even if NLC has a substantial interest in this case, it can protect its interests through the state court litigation. (ECF No. 19, Opp. at PageID #315). Plaintiff further argues that the state case against NLC will determine whether the Agreement allowed NLC to terminate the Plaintiff, and that this issue would not be decided in this litigation. (Id. at PageID #315-16). Plaintiff misses the point. The allegations in this case would require the Court to determine the contractual rights and duties of the parties to the agreement. As a party to the

agreement, NLC's interests are implicated in this lawsuit. Absent intervention, it cannot protect those interests as well as it could as a party.

### 4. Absent NLC's intervention, there is inadequate representation of its interest by the Parties.

With respect to a potential intervenor showing inadequate representation, "this burden 'is minimal because it is sufficient that the movant[ ] prove that representation may be inadequate.'" *Miller*, 103 F.3d at 1247; quoting *Linton v. Commissioner of Health & Env't,* 973 F.2d at 1319. One is not required to show that the representation will in fact be inadequate. *Id*. NLC is a party to the Agreement, and as the employer, it has its own interests in the interpretation of the Agreement. Neither of the Parties, who were employees, share these specific interests in the interpretation of the Agreement. Therefore, without intervention, NLC's rights may not be adequately represented by the Parties. Accordingly, NLC may intervene of right.

## B. Permissive Intervention

The Court next addresses the issue of permissive intervention. It requires the proposed intervener to establish the motion to intervene is timely and allege at least one common question of law or fact. *Miller*, 103 F.3d at 1248. As discussed *supra*, NLC's Motion is timely.

### 1. There are common questions of fact.

In state court, Plaintiff argues that his termination constitutes a breach of the Agreement because the Agreement does not provide a basis for his termination upon Defendant's resignation.[14] In federal court, Plaintiff argues that Defendant's resignation constitutes a breach of the Agreement and his fiduciary duties to Plaintiff, because the resignation triggered his termination.[15] The first argument hinges on the Parties not jointly entering the Agreement,

---

[14] See ECF No. 14, *Sparks v. Nations Lending Corp.*, Case No. CV 22 959703.
[15] See ECF No. 6, First Am. Compl.

therefore one's resignation would have no effect on the other's employment; the second argument hinges on the Parties jointly entering the Agreement, therefore one's resignation could result in the termination of the other. Plaintiff cannot have his cake and eat it too. Either the Agreement allows for his termination upon the resignation of Defendant, or it does not. No matter how you slice it, common to both arguments are the contractual rights, duties, and obligations created by the Agreement. Consequently, the Court finds that there are common questions of law or fact.

Once timeliness and a common question of law or fact are established, the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed. *Miller*, 103 F.3d at 1248. The Court, upon reviewing all relevant factors, finds that intervention would not cause any undue delay or prejudice. Intervention would allow the Parties and NLC to litigate their claims and defenses at the same time in one court and avoid inconsistencies between the state and federal courts. This is especially true since the state court has stayed its case pending the outcome of this litigation. Accordingly, the Court finds that NLC has also met the standard for permissive intervention.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** NLC's Motion to Intervene (ECF No. 13).

**IT IS SO ORDERED.**

Dated: May 24, 2023

*Charles Fleming*

CHARLES E. FLEMING
U.S. District Court Judge