UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JACOB D. SPARKS, | ) | CASE NO. 1:22-CV-00638 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHARLES E. FLEMING |
| vs. | ) | |
| | ) | |
| JUSTIN FITZHUGH, | ) | |
| | ) | |
| Defendant. | ) | **OPINION AND ORDER** |
| | ) | |

Pending before the court is Defendant Justin Fitzhugh's ("Defendant") Motion to Dismiss (ECF No. 9) Plaintiff Jacob D. Sparks' ("Plaintiff") First Amended Complaint (ECF No. 6).  For the following reasons, the Motion is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

On September 23, 2013, Plaintiff and Defendant (collectively "the Parties") entered into an Employment Agreement (the "Agreement") with Nations Lending Corporation ("NLC").  (ECF No. 6, Am. Compl. at PageID #5).  Under the Agreement, NLC employed the Parties as "'Recruiters,' responsible for recruiting and procuring loan originators and branch offices in any state that Nations Lending does business." (ECF No. 6-1, Am. Compl. at PageID #5).  The Parties were each paid a set salary and a set commission from the loans closed by loan originators and branches they recruited for NLC.  (*Id.* at PageID #05–06).  Those commissions were pooled and divided evenly between the Parties.  (*Id.* at PageID #106).

On March 1, 2017, Defendant provided Plaintiff with a proposed Addendum to the Agreement, with a revised compensation split that Plaintiff rejected.  (ECF Nos. 6, Am. Compl. at PageID #97; 6-2, Proposed Addendum at PageID #113-14).  On February 26, 2018, Defendant

resigned his employment with NLC.  (ECF No. 6., Am. Compl. at PageID# 97).

Plaintiff alleges that the Defendant's resignation was a "sham," that was "constructed and executed, with NLC's knowledge, to extricate Fitzhugh and NLC from the Agreement so that those parties could renegotiate a new compensation structure without consideration of their contractual obligations to Sparks."  (*Id.* at PageID #98).  Plaintiff alleges that Defendant's sole motivation was to supply NLC with a basis to end its contractual relationship with Plaintiff.  (*Id.*).

On February 28, 2018, NLC terminated Plaintiff.  (*See* ECF No. 6-3, Termination Letter at PageID #115).  The Termination Letter states:

> "Effective as of February 26th, Justin Fitzhugh resigned his employment and terminated the Agreement of September 23, 2013 by and between you, Fitzhugh, and Nations Lending Corporation ("NLC").  This terminates your employment with NLC as of today."

(*Id.*).  The Agreement includes a provision allowing NLC to terminate Plaintiff or Defendant only for the following reasons:

> (a)      due to the willful misconduct of either Sparks, or Fitzhugh which is not corrected within thirty (30) days of both (i) a meeting in person with Recruiters, and NLC to specifically address the misconduct (ii) receipt of written notice of such misconduct by NLC to each Sparks and Fitzhugh;
> (b)      if NLC receives official written notice from a regulatory or governmental authority within the mortgage industry that the employment of either Sparks or Fitzhugh is in direct violation of the law;
> (c)      Sparks or Fitzhugh is convicted of a crime which will cause NLC to lose their approval with Fannie Mae, Freddie Mac, Ginnie Mae, or FHA lending authority;
> (d)      either Sparks or Fitzhugh are subject to a non-compete or other restrictive agreement as described in paragraph 4;
> (e)      if either Sparks or Fitzhugh are convicted of a felony which would cause NLC to not be able to employ them pursuant to regulatory guidelines.

(ECF No. 6-1, Agreement at PageID #109–10).  Following Plaintiff's termination, Defendant was rehired and continued to work with NLC.  (ECF No. 6, Am. Compl. at PageID #99).

**B. Procedural Background**

On April 20, 2022, Defendant removed this action to this Court.  (ECF No. 1).  On May 18, 2002, Plaintiff filed his Amended Complaint  (ECF No. 6).  On June 15, 2022, Defendant filed his Motion to Dismiss the Amended Complaint (ECF No. 9).  On July 15, 2022, Plaintiff opposed the Motion.  (ECF No. 10).  Defendant filed his reply in support of the Motion on July 29, 2022. (ECF No. 11).

## II.     LEGAL STANDARD

A party may move to dismiss a claim against it when the claimant has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A 12(b)(6) motion to dismiss tests the complaint's legal sufficiency. *Riddle v. Egensperger*, 266 F.3d 542, 550 (6th Cir. 2001). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true.  *Bell Atl. Corp.*, 550 U.S. at 555.  The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id*.  In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir.1998).

### III.    LAW AND ANALYSIS

Defendant asserts that Plaintiff's Amended Complaint fails to state a claim for breach of contract, breach of fiduciary duty owed to a partner or de facto partner, tortious interference with contract, and breach of fiduciary duty as joint venturers.  (*See* ECF No. 9, Mot. Dismiss).

As a federal court located in Ohio exercising diversity jurisdiction, this Court must apply the substantive law of the forum state and federal procedural law to this dispute.  *Hisrich v. Volvo Cars of N. Am., Inc.,* 226 F.3d 445, 449 (6th Cir. 2000); *Biegas v. Quickway Carriers, Inc.,* 573 F.3d 365, 374 (6th Cir. 2009) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  The Agreement includes a venue clause directing federal and state courts located in Cuyahoga County, Ohio, as the proper venues for a dispute.  (ECF No. 6-2, Am. Compl. at PageID #111).  Therefore, Ohio law substantively governs this dispute, and Fed. R. Civ. P. 12(b)(6) governs the procedural posture.

### A.  Count One: Breach of Contractual Good Faith and Fair Dealing

Defendant argues that Plaintiff fails to state a claim in Count One because there is no actionable breach of a specific obligation imposed by the Agreement.  (ECF No. 9, Mot. to Dismiss at PageID #131–34).

#### 1.  There is no contract between the Parties.

Plaintiff alleges that the Parties entered into a contract on September 23, 2023.  (ECF No. 6, Am. Compl. at PageID #95).  Plaintiff attached the Agreement as an Exhibit to the Complaint.  (ECF No. 6-1, Agreement at PageID# 105–14).  The Agreement is a three-party Agreement between the Parties and NLC.  (*Id.*).  Plaintiff only provided the Agreement to support his allegations; it does not include any agreement solely between the Parties.  (*Id.*).  Fed. R. Civ. R. 12(b)(6) tests the sufficiency of the Amended Complaint; therefore, this Court's review will be limited to the Agreement.  *See Danzinger & De Llano, LLP v. Morgan Verkamp*, LLC, No. C-

4

220478, 2023 WL 3606699 at*11 n.1 (Oh. Ct. App. 2023) (analyzing three-party contract attached to complaint opposed to alleged two-party contract between parties in a 12(b)(6) motion).

Plaintiff did not plead facts showing a valid contract between the Parties, to support Count One.  To state a claim for breach of contract, Plaintiff must, at a minimum, allege that Plaintiff and Defendant were parties to a contract and that the Defendant breached a duty premised upon the terms of that contract. *STE Invs LLC v. Macprep, Ltd.*, No. OT-21-036, 2022 WL 3011012 at *7 (Ohio Ct. App. 2022) (citing *State Auto Property & Cas. Ins. Co. v. ABCO Fire Protection, Inc.*, 170 N.E.3d 1255, 1259 (Ohio Ct. App. 2021) ("When a duty is premised entirely upon the terms of a contract, a party may recover based upon breach of contract.'")).  Under Ohio law, a valid contract requires an offer, acceptance, consideration, and mutual assent between two or more parties with legal capacity. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 3 (2002).  The alleged contract must also reflect essential terms with definiteness and certainty, with a meeting of the minds to all essential terms. *Danzinger*, 2023 WL 3606699 at *5.

Plaintiff asserts that four terms of the Agreement support his allegation that a duty was imposed upon Defendant: 1) the Parties wished to "establish a business relationship" to "the mutual advantage" of the Parties and NLC, 2) the Parties agreed to pool the compensation earned to split equally, 3) the Parties agreed to devote their professional efforts to their work at NLC, and 4) the Parties agreed not to amend or modify the Agreement absent consent by all parties of the contract.  (ECF No. 6, Am. Compl. at PageID #99–100).  In his Opposition, Plaintiff shifts his focus to two of the terms: 1) to pool compensation earned and split commissions equally, and 2) not to modify or amend the Agreement without each party's written consent.  (ECF No. 10, Opp. at PageID #163–66).  Plaintiff contends that a contract between the Parties is demonstrated through those terms.  (*Id*.).

NLC's requirement to pay the Parties equal shares of their commission was not a requirement imposed upon the Parties. That duty belonged to NLC. (ECF 6-1, Agreement at PageID #106). Although Plaintiff pleaded facts showing that the Parties and NLC agreed that no modifications or amendments be made without written consent of all parties, Plaintiff does not allege facts showing consent was required to terminate the Agreement. (ECF 10, Opp. at PageID #164). Modification and termination of a contract are different. *See Transworld Sys. v. Ohio Univ.,* No. 2003-01873-AD, 2003 WL 22905242 at *5 (Ohio Ct. Cl. 2003) (explaining that under contract law, "[r]ecission, abandonment, or other change in a contract must be by mutual consent of the parties and does not include unilateral termination or cancellation."). The Agreement's terms include bases for termination, and either of the Parties' resignation is not one of them. (ECF No. 6-1, Agreement at PageID #109-10). The Agreement does not include any terms solely between the Parties, such as a term regarding the effect of resignation by one party on the Agreement. The Agreement's terms encompass rights and obligations between the Parties as employees with NLC as their employer, and vice versa. (*Id*. at PageID #105-11). Consequently, Plaintiff has failed to plead facts showing a contract existed between the Parties.

### 2. There is no implied duty of good faith and fair dealing owed between the Parties.

Defendant argues that a separate cause of action for breach of good faith and fair dealing does not exist because there was no contract between the Parties and no specific contractual obligations breached. (ECF No. 9, Mot. to Dismiss at PageID# 131). A claim for a breach of contract subsumes the corresponding claim for breach of the implied duty of good faith and fair dealing. *Shertok v. Wallace Grp. Gen. Dentistry for Today, Inc.*, Nos. C-190457, C-190464, 2020 WL 5406794 at *7 (Oh. Ct. App. 2020). A complaint that fails to state a claim for breach of contract, also fails to state a claim for breach of the duty of good faith and fair dealing. *State ex*

*rel. Maher v. City of Akron*, No. 28761, 2018 WL 5304437 at *5 (Oh. Ct. App. 2018).  Plaintiff failed to state a claim for breach of contract, therefore, he also failed to state a claim that Defendant breached the implied duty of good faith and fair dealing.  Count One is dismissed.

### B.  Count Two: Breach of Duty Owed to Partner or De Facto Partner

Under Ohio law, the elements for a breach of fiduciary duty are 1) the existence of a duty arising from a fiduciary relationship, 2) failure to observe the duty, and 3) an injury resulting therefrom.  *Thomas v. Fletcher*, No. 17-05-31, 2006 WL 3702699 at *2 (Ohio Ct. App. 2006) (citing *Werthman v. DONet,* No. 20814, 2005 WL 1490372 at *7 (Ohio Ct. App. 2005)).  Ohio courts recognize a fiduciary duty among partners and impose obligations among them of good faith and integrity in their dealing with one another and their partnership activities.  *Lorain Nat'l Bank v. Saratoga Apartments*, 61 Ohio App.3d 127, 130 (Ohio Ct. App. 1989).

Defendant argues that Count Two fails because Plaintiff failed to plead the existence of a partnership.  (ECF No. 9, Mot. to Dismiss at PageID #135–36).  A partnership is defined as an association of two or more persons to carry on as co-owners a business for-profit.  Ohio Rev. Code § 1776.01(M).  To state a claim for breach of fiduciary duty owed to a partner, Plaintiff must plead facts showing the existence of a partnership.  *Saxe v. Dlusky*, No. 09AP-673, 2010 WL 4324198 at *6 (Ohio Ct. App. 2010) ("The first element required to be shown in a breach of fiduciary duty claim is the existence of a duty arising from a fiduciary relationship.").  Under Ohio law, the elements of a partnership are (1) an express or implied partnership contract between the parties, (2) the sharing of profits and losses, (3) mutuality of agency, (4) mutuality of control, and (5) the co-ownership of the business and of the property used for partnership purposes or acquired with partnership funds.  *Anchor v. O'Toole*, 94 F.3d 1014, 1024 (6th Cir. 1996).

Defendant asserts that Plaintiff did not plead facts showing that the Parties shared profits and losses, were co-owners of a business, or had mutual of agency or control of the business. (ECF No. 9, Mot. to Dismiss at PageID #135–39). Defendant also asserts that if a partnership did exist, it was at-will and could be terminated at-will by either party. (*Id.* at PageID #139). Defendant argues that Plaintiff must plead facts showing all five elements. (ECF No. 9, Mot. to Dismiss at PageID #135). However, Ohio case law suggests that in the absence of an express partnership by written agreement, an implied partnership may exist from the totality of facts and circumstances because no single fact or circumstance operates as conclusive. *Capital Equity Grp. v. Ripken Sports, Inc.*, 744 Fed.Appx. 260, 264 (6th Cir. 2018) (citing *In re Estate of Ivanchak*, 169 Ohio App. 3d 140, 144 (Ohio Ct. App. 2006)). When considering the totality of the facts and circumstances alleged, they are insufficient to show there was a partnership between the Parties.

### 1. The Parties do not share profits or losses.

While profits of a business alone may generally constitute prima facie evidence that one is a partner to the business, it is not alone conclusive of a partnership – specifically if other essential elements, including a contract, are absent. *Ehrhard v. Abbate*, No. 79679, 2002 WL 1265569 at *1 (Oh. Ct. App. 2002). Under Ohio law, a business for-profit, or a partnership, requires a community of interest in the profits of the business partnership and an agreement or right to share profits, as well as an obligation to share losses. *Id*. at *1. "It is essential that participation in profits be as profits and not as a payment for services or for the use of property proportioned to profits in order for an inference of partnership to arise." *Id*. at *2. The Parties are not participating in profits. They receive payment in the form of salary and commission for their recruiting services. (ECF No. 6-1 at PageID #106). Evidence of receiving yearly distributions based on profits of a company may establish part-ownership as opposed to a traditional employee, but a set yearly salary does

not.  *Moore v. Mount Carmel Health Sys.*, No. 15CV5683, 2017 WL 10795905 at *23-24 (Oh. Com. Pl. Sep. 26, 2017).

Plaintiff contends that the Parties' limited reimbursement of personal funds are losses. (ECF Nos. 10, Opp. at PageID #169–70; 6-1 at PageID #106–07).  These costs are not losses because they are different from the costs NLC, or any business, would incur as a result of the company's changing financial status.  Even so, the Agreement expressly provides that NLC "shall pay for all travel costs, and all pre-approved marketing costs."  (ECF No. 6-1, Agreement at PageID #106).  Not only does this indicate that personal expenses are reimbursable, but the Agreement further requires that NLC provide the Parties with a corporate credit card for expenses incurred in execution of their duties as employees.  (*Id.*).  Regardless of NLC's financial standing, NLC was obligated to pay the Parties their allocated salary and commission pursuant to the Agreement.  As salaried employees, the Parties do not bear the costs of NLC's increase or decrease in profits or overall revenue.  Plaintiff failed to plead facts showing the Parties had a community of interest in the profits or losses of a partnership.

### 2.  The Parties do not have mutuality of agency or control.

Plaintiff argues that because Defendant's resignation triggered Plaintiff's termination, the Parties were more than mere coworkers.  (ECF No. 10, Opp. at PageID #170–71).  It is unclear how this allegation demonstrates that the Parties had any agency or control of one another.  The Agreement states that no party may amend or modify the Agreement, without consent of all parties to the Agreement, including NLC, showing that the Parties lacked control.  *See Capital Equity Grp. v. Ripken Sports Inc.*, 744 Fed.Appx. 260, 264 (6th Cir. 2018) (explaining that the contract at issue precluded the parties from binding each other because it constituted the entire agreement between the parties and could not be amended or modified without consent of all parties to the contract).

9

NLC hired the Parties as recruiters.  (ECF No. 6-1, Agreement at PageID #105).  The Agreement states that NLC "employs Recruiters to recruit and procure loan originators and branch offices in any state in which NLC currently conducts business."  (*Id.*).  This term restricts the Parties' ability to control their activities because they are limited to working in states that NLC allows.  The Parties could not exercise control and go beyond this authority without breaching the Agreement.  Plaintiff has failed plead facts showing mutuality of agency or control.

### 3. The Parties do not have co-ownership of the business and of the property used for partnership purposes or acquired with partnership funds

Under Ohio law, co-ownership of a business includes the business and property used for partnership purposes or acquired with partnership funds.  *L.F.PIP., LLC v. Hustler Cincinnati, Inc.,* 533 Fed.Appx. 615, 619 (6th Cir. 2013); *see also Simons v. Buldas*, No. L-15-1316, 2016 WL 5790643 at *4 (Oh. Ct. App. 2016) (holding that there was no evidence of a partnership due to the lack of co-owned real estate or property of any kind connected to their respective practices). Plaintiff has not plead facts showing the Parties co-owned a business or property used to carry out their work for NLC.  Plaintiff has failed to plead facts establishing the existence of a partnership. Consequently, the Parties' arguments relating to the existence of an at-will partnership are moot. (*See* ECF Nos. 9, Mot. to Dismiss at PageID #139; 10, Opp. at PageID #171–72). Count Two is dismissed.

### C. Count Three: Tortious Interference with a Contract

A claim for tortious interference with a contract only arises when one party is induced to breach the contract by a third person that is *not* a party to the contract itself.  *Battista v. Lebanon Trotting Assoc.*, 538 N.E. F.2d 111, 116 (6th Cir. 1976) (emphasis added).  It is uncontested that the Parties and NLC were all parties to the Agreement.  Plaintiff cannot allege Defendant tortiously interfered with a contract that he was a part of. *See Maddox Def. Inc., v. GeoData Sys. Mgmt.,* 135

N.E.3d 1212, 1222 (Oh. Ct. App. 2019) (citing *Castle Hill Holdings LLC v. Al Hut Inc.*, 8th Dist. Cuyahoga No. 864442, 2006 WL 726911 at *6 (Oh. Ct. App. 2006) ("It is axiomatic that the wrongdoer must be a non-party to the contract."); *Lundeen v. Smith-Hoke*, No. 15AP-236, 2015 WL 8196506 at *9 (Oh. Ct. App. 2015) ("Under Ohio law, an action for tortious interference may only lie against an outside party to the contract or prospective business relationship.")).

Even if Plaintiff properly brought this claim, it would still fail. Defendant argues that Plaintiff fails to state a claim that Defendant tortiously interfered with a contract for two reasons: 1) Plaintiff failed to plead that Defendant acted with malice and 2) Plaintiff cannot claim tortious interference of a contract because Defendant was a party to the contract.  (ECF No. 9, Mot. to Dismiss at PageID #140).  Under Ohio law, to plead a claim for tortious interference with a contract, Plaintiff must plead 1) the existence of a contract, 2) the wrongdoer's intentional procurement of 3) the contract's breach, 4) a lack of justification, and 5) resulting damages.  *Fred Siegel Co., L.P.A., v. Arter & Hadden*, 85 Ohio St.3d 171, syllabus (1999).  Ohio courts have held "[m]alice, per se, is not a requirement, but rather, the concept of intentional impropriety is embodied in…intentional procurement and lack of justification."  *Frederick D. Harris M.D., Inc. v. Univ. Hosp. of Cleveland*, Nos. 76724, 76785, 2002 WL 363593 at *8 (Oh. Ct. App. 2002).  A complaint for tortious interference that fails to provide allegations regarding each of the five elements may be properly dismissed for failure to state a claim for which relief can be granted.  *Arms Trucking Co. v. Fannie Mae,* No. 2014-G-3186, 2014 WL 6139969 at *5 (Oh. Ct. App. 2014) (quoting *Gibson v. City Yellow Cab Co.*, No. 20167, 2001 WL 123467 at *5 (Oh. Ct. App. 2001)).

**1.  Existence of a Contract**

As discussed above, Plaintiff has failed to plead facts showing a contract between the Parties and he only alleges facts showing a three-party agreement between the Parties and NLC

exists.

### 2.   Intentional Procurement of the Contract's Breach

Plaintiff asserts that Defendant's resignation constitutes his intentional procurement of the Agreement's breach.  (ECF No. 10, Opp. at PageID #172).  To adequately plead this element, Plaintiff must plead facts showing that either 1) Defendant acted with the purpose or desire to interfere with the performance of the contract, or 2) the defendant knew that interference was certain or substantially certain to occur as a result of its actions.  *Ginn v. Stonecreek Dental Care*, 30 N.E.3d 1034, 1041 (Oh. Ct. App. 2015).

Plaintiff alleges that Defendant asked to renegotiate their compensation split, and that when Plaintiff refused, Defendant resigned.  (ECF No. 6, Am. Compl. at PageID #97).  Plaintiff then asserts that after his resignation, Defendant was rehired by NLC.  (*Id*. at PageID #99).  These facts show that Defendant resigned with the purpose to make more money, not to interfere with Plaintiff's ability to continue working for NLC.  Moreover, the Agreement does not state that the resignation of one Party would result in the termination of the other.  Therefore, there are no facts alleged showing that  Defendant knew or was substantially certain that his resignation would result in Plaintiff's termination.

### 3.   Lack of Justification and Damages

Under Ohio law, for a breach of contract to lack justification, it must be improper.  *Fred Siegel Co.*, 85 Ohio St. at 176 (It is not enough that an actor's interference with a contract cause damages, but rather that the interference lacks justification)*.*  Plaintiff asserts that Defendant lacked justification to resign because his sole motivation was to provide NLC with a basis to end its contractual relationship with Plaintiff.  (ECF No. 10, Opp. at PageID# 172–73).  The Court disagrees.  The facts alleged show Defendant's motivation was to make more money.  There are

no terms in the Agreement that Defendant's resignation constitutes a breach, therefore, he does not need to justify it.  If the Court were to accept Plaintiff's argument, it would be accepting the proposition that the Parties were obligated to work together, for NLC, indefinitely; neither would ever have an option to resign without the other's consent.  This is not the case.  Plaintiff did not plead facts showing any terms in the Agreement obligating the Parties to a definite duration of employment.  The Agreement was terminable and Defendant had the right to resign because the Agreement had an indefinite duration.  *See Frankart v. Jeep Corp.*, No. L-85-062, 1985 WL 8222 at *1 (1985) (explaining that an employment contract of indefinite duration is terminable at any time).  Count Three is dismissed.

### D.  Count Four: Breach of Fiduciary Duty as a Joint Venturer

Defendant's arguments as to Count Four are similar to those as to Count Two. He asserts that Plaintiff failed to plead a claim for breach of fiduciary duty as a joint venturer: 1) Plaintiff did not plead the sharing of both profits and losses, 2) there was no co-ownership of a business or mutuality of agency or control, and 3) even if a joint venture existed, it was at at-will and terminable by either party.  (ECF No. 9, Mot. to Dismiss at PageID #140–41).

Under Ohio law, a joint venture is a partnership that is established for a single business enterprise.  *Anchor v. Toole*, 94 F.3d 1014, 1024 (6th Cir. 1996).  To adequately plead the existence of a joint venture, Plaintiff must plead facts showing 1) the existence of a joint contract, 2) an intention to associate as joint venturers, 3) a community of interest and control, including contributions to the joint venture, and 4) an agreement for the division of profits and losses jointly, not severally.  *Id*.

There are two requirements of a joint venture that differ from a partnership: 1) a joint contract, and 2) an intention to associate as joint venturers.  As previously discussed, Plaintiff did

13

not plead facts that show a joint contract between the Parties.  Plaintiff has only pled facts showing the existence of the Agreement between the Parties and NLC.  (ECF Nos. 6, Am. Compl. at PageID #101; 6-1, Agreement at PageID #105-11).  The Agreement does not include any language showing the Parties' intent to associate together as joint venturers, nor do its terms create a joint contract between the Parties.  The Agreement shows the Parties' intent to perform recruitment work in exchange for a salary and commission from NLC.  (*See* ECF No. 6-1, Agreement).  This is insufficient.  *See L & H Leasing Co. v. Dutton*, 82 Ohio App.3d 528, 532 (Oh. Ct. App. 1992) ("Where the existence of the relationship of a joint venture is at issue, there needs to be substantial evidence that the parties intended to join their efforts.").

The remainder of the elements required to establish the existence of a joint venture are virtually the same as the elements of a partnership.  The Court has previously found as to Count Two that Plaintiff has failed to plead any facts establishing mutuality of interest and control, or sharing of profits and losses.  Because these elements are common to partnerships and joint ventures, Plaintiff has failed to plead the essential elements of a joint venture.  Count Four is dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 9).

**IT IS SO ORDERED.**

Date: September 29, 2023

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**