# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| JACOB D. SPARKS, | ) CASE NO. 1:22-cv-638 |
| Plaintiff, | ) JUDGE CHARLES E. FLEMING |
| v. | ) |
| JUSTIN FITZHUGH, | ) **MEMORANDUM OPINION AND** |
| Defendant. | ) **ORDER** |
| | ) |
| NATIONS LENDING CORPORATION, | ) |
| Intervenor – Plaintiff, | ) |
| v. | ) |
| JACOB D. SPARKS, | ) |
| Intervenor – Defendant, | ) |
| JUSTIN FITZHUGH, | ) |
| Intervenor – Defendant. | ) |

Pending before the Court are two motions for judgment on the pleadings: (i) Jacob D. Sparks's motion for judgment in his favor on both Nations Lending Corporation's ("NLC") intervenor complaint and Sparks's own counterclaim (ECF No. 33); and (ii) NLC's motion for judgment in its favor on Sparks's counterclaim (ECF No. 37).  After reviewing the parties' initial briefing, the Court ordered supplemental briefing on federal abstention doctrines.  (ECF No. 39).  For the reasons discussed below, the Court declines to abstain, elects to exercise its jurisdiction, and **DENIES** the cross-motions for judgment on the pleadings.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Agreement – Formation and Termination

On September 23, 2013, Sparks and Justin Fitzhugh entered into an employment agreement with NLC (the "Agreement"); the Agreement as to both is contained in one document.  (ECF No. 6-1; ECF No. 24-1).  Under the Agreement, NLC, a mortgage banker, employed Sparks and Fitzhugh as "[r]ecruiters, responsible for recruiting and procuring loan originators and branch offices in any state that [NLC] does business."  (ECF No. 24- 1, PageID #408).  For the first sixth months of employment, NLC paid both Sparks and Fitzhugh a set salary ($10,000 per month), as well as an equally divided commission based on the non-brokered loan volume closed by the loan originators and branch offices recruited by Sparks and Fitzhugh for NLC ("Recruits").  (*Id.* at PageID #409).  Thereafter, NLC paid Sparks and Fitzhugh solely through an equally divided commission based on the non-brokered loan volume originated and closed by Recruits.  (*Id.*).

On February 26, 2018, Fitzhugh resigned from his employment at NLC.  (ECF No. 24, ¶ 11; ECF No. 25, ¶17).  On February 28, 2018, NLC sent a letter to Sparks informing him that Fitzhugh's resignation terminated the Agreement and Sparks's employment with NLC. (ECF No. 24, ¶ 12; ECF No. 24-2; ECF No. 25, ¶ 18; ECF No. 25-2).  NLC subsequently paid Sparks pursuant to the windup compensation provision (paragraph 14) of the Agreement.  (ECF No. 24, ¶ 13 (citing ECF No. 24-1, PageID #412)).

### B.    Initiation of State Court Proceedings

On February 17, 2022, Sparks filed a complaint in state court against NLC for breach of contract ("NLC Litigation").  Compl., *Sparks v. Nations Lending Corp.*, No. CV-22-959703 (Cuyahoga Cty. Ct. of Common Pl. Feb. 17, 2022).  Sparks alleged that NLC breached the Agreement by terminating Sparks's employment because of Fitzhugh's resignation; he claimed

that this had no effect on Sparks's contractual relationship with NLC and did not constitute grounds for termination. *Id.*

On February 24, 2022, Sparks also filed a complaint in state court against Fitzhugh for breach of contract and breach of duty ("Fitzhugh Litigation"). (ECF No. 1-1, PageID #14–21). In relevant part, Sparks alleged that: (i) Fitzhugh returned to work with NLC within 72 hours of NLC terminating Sparks's employment; and (ii) Fitzhugh's resignation and subsequent reinstitution of employment with NLC breached the duties he owed to Sparks under the Agreement and as a partner (loyalty, good faith, and fair dealing). (*Id.* at PageID #18–20).

## C.    Removal to Federal Court

On April 20, 2022, Fitzhugh removed the Fitzhugh Litigation to the Northern District of Ohio, asserting diversity jurisdiction under 28 U.S.C. § 1332.[1]  (ECF No. 1).  Sparks filed an amended complaint on May 18, 2022.  (ECF No. 6).  The pleadings were amended to allege that Fitzhugh's resignation was a sham/artifice and Fitzhugh's sole motivation for resigning was to end Sparks's contractual relationship with NLC. (*Id.* ¶¶ 31–32, 38).  The amended complaint asserted four causes of action: (i) Breach of Contract (Count One); (ii) Breach of Fiduciary Duty Owed to Partner or De Facto Partner (Count Two); (iii) Tortious Interference with Contract (Count Three); and (iv) Breach of Fiduciary Duty as Joint Venturer (Count Four).  (*Id.* at PageID #99–102).

## D.    Stay of the NLC Litigation and the Intervenor Complaint

On January 12, 2023, NLC moved to dismiss or, in the alternative, stay in the NLC Litigation.  Mot. to Dismiss, *Sparks v. Nations Lending Corp.*, No. CV-22-959703 (Cuyahoga Cty. Ct. of Common Pl. Jan. 12, 2023).  NLC argued that the state court should stay the NLC Litigation until the Fitzhugh Litigation was resolved in the Northern District of Ohio.  *Id.* at 11–13.  The

---

[1] The notice of removal alleges that Fitzhugh is a citizen of Georgia and Sparks is a citizen of Florida.  (ECF No. 1, PageID #2).

3

same day, NLC moved to intervene in this case (the Fitzhugh Litigation).  (ECF No. 13).  On February 17, 2023, the state court granted NLC's request to stay the NLC Litigation.  Journal Entry, *Sparks v. Nations Lending Corp.*, No. CV-22-959703 (Cuyahoga Cty. Ct. of Common Pl. Feb. 17, 2023).

The Court granted NLC's motion to intervene on May 24, 2023.  (ECF No. 23).  On June 28, 2023, NLC filed its intervenor complaint against Fitzhugh and Sparks seeking a declaratory judgment under the Ohio Declaratory Judgment Act, Ohio Rev. Code Chapter 2721, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  (ECF No. 24).  NLC requests a declaration that: (i) NLC, Sparks, and Fitzhugh were all parties to the Agreement; (ii) Sparks and Fitzhugh were joint obligees; (iii) Fitzhugh's resignation triggered the termination of the Agreement for both Sparks and Fitzhugh; and (iv) NLC performed all duties owed to Sparks and Fitzhugh under the Agreement.  (*Id.* at PageID #406).

On July 13, 2023, Sparks filed an answer and counterclaim against NLC.  (ECF No. 25). Sparks's counterclaim against NLC asserts the same breach of contract claim found in Sparks's complaint in the NLC Litigation.[2]  *Compare* Compl., *Sparks v. Nations Lending Corp.*, No. CV-22-959703 (Cuyahoga Cty. Ct. of Common Pl. Feb. 17, 2022), *with* (ECF No. 25, PageID #423–27).  On July 19, 2023, Fitzhugh answered the intervenor complaint.  (ECF No. 26).

### E.    Relevant Proceedings Post-Intervening

On September 29, 2023, the Court dismissed Sparks's amended complaint and his claims against Fitzhugh after finding that Sparks failed to plead sufficient facts to establish a contract, partnership, or joint venture between Sparks and Fitzhugh.  (ECF No. 28).  The Court's order of

---

[2] In fact, the factual background and breach of contract claim in Sparks's counterclaim and the NLC Litigation complaint are identical.  *Compare* Complaint at 2–5, *Sparks v. Nations Lending Corp.*, No. CV-22-959703 (Cuyahoga Cty. Ct. of Common Pl. Feb. 17, 2022), *with* (ECF No. 25, PageID #424–27).

dismissal was appealed to the Sixth Circuit.  (ECF No. 30).  That appeal was voluntarily dismissed on April 26, 2024.[3]  (ECF No. 31).

After the appeal's dismissal, Sparks filed a motion for judgment on the pleadings on the intervenor complaint and a motion for partial summary judgment on his counterclaim.  (ECF No. 33).  NLC filed a timely opposition.  (ECF No. 36).  NLC then filed a motion for judgment on the pleadings as to Sparks's counterclaim for breach of contract and a conditional voluntary dismissal of all its claims within the intervenor complaint against both Sparks and Fitzhugh.  (ECF No. 37).  Sparks opposed NLC's motion for judgment on the pleadings and conditional voluntary dismissal.  (ECF No. 38).

On August 5, 2024, the Court raised concerns about the issue of federal abstention, noting that the breach of contract claims raised in the intervenor complaint and Sparks's counterclaim were identical to the breach of contract claim pending in the NLC Litigation before the state court. (ECF No. 39).  The Court ordered the parties to submit supplemental briefing on whether the Court should abstain from exercising jurisdiction.  (*Id.* at PageID #569).  On August 26, 2024, Sparks, Fitzhugh, and NLC all submitted supplemental briefs.  (ECF Nos. 42, 43, 44).

## II.    ABSTENTION ANALYSIS

In the order for supplemental briefing, the Court specifically requested that the parties address the issue of abstention under (1) *Colorado River*,[4] (2) *Wilton/Brillhart*,[5] or (3) any other relevant doctrine.  (*Id.* at PageID #569).  NLC argues that the Court should continue to exercise jurisdiction over this case and decline to apply any abstention or comity doctrines because the state

---

[3] The Sixth Circuit had ordered Sparks to show cause why the appeal should not be dismissed for lack of jurisdiction, noting that NLC's claims and Sparks's counterclaim had not been resolved.  Order, *Sparks v. Fitzhugh*, No. 23-3875 (6th Cir. Apr. 5, 2024).

[4] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 967 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).

[5] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2127, 132 L. Ed. 2d 214 (1995); *Brillhart v. Excess Ins.*, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942).

court's order staying the proceedings pending the resolution of this case constitutes a final, appealable order that: (i) functions as a surrender of jurisdiction to the Northern District of Ohio; and (ii) resolved the parallel or duplicative litigation.  (ECF No. 44, PageID #621–22).  NLC notes that the state court granted the stay after the parties submitted briefing on the prudential comity doctrine and the state court docket labeled the order as final.  (*Id.*).

Sparks does not oppose a potential order of abstention.  (ECF No. 42, PageID #593).  Sparks argues that *Colorado River* abstention is inapplicable considering NLC's request for declaratory relief in the intervenor complaint.  (*Id.*).  Sparks also argues that even if the *Colorado River* abstention doctrine applied, half of the factors would support abstention while none would oppose it.  (*Id.* at PageID #593–96).  At the same time, Sparks argues that *Wilton/Brillhart* abstention applies and supports abstention after weighing the applicable factors.  (*Id.* at PageID #597–98).

Fitzhugh does not object to the application of any abstention doctrine.  (ECF No. 43, PageID #611).  Fitzhugh argues that *Wilton/Brillhart* abstention should not be applied because it would result in piecemeal litigation.  (*Id.* at PageID #612).  Fitzhugh instead argues that *Colorado River* abstention is the proper doctrine to apply, and the relevant factors favor abstention.  (*Id.* at PageID #613).  Fitzhugh argues that the Court should dismiss the case outright if it declines to exercise jurisdiction under *Colorado River* abstention.  (*Id.*)

## A.      Abstention Doctrines

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 967 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).  Under extraordinary circumstances, where considerations of "wise judicial administration" and regard to "conservation of judicial resources and comprehensive

disposition of litigation" are present, courts may use their discretion to abstain from exercising

jurisdiction.  *Id*. (quoting *Kerotest Mfg. Co.* v. *C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183

(1952)).

> ### 1.    Colorado River Abstention

In *Colorado River* the Supreme Court held that a district court may abstain from exercising

jurisdiction under "extraordinary" circumstances when similar litigation is pending before a state

court.  *Id*. at 818.  First, courts must determine whether there are parallel proceedings in the state

court as a threshold matter.  *Crawley v. Hamilton Cty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984).

The state proceedings must only be "substantially similar" to the federal proceedings.  *Romine v.*

*Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998); *Bates v. Van Buren Twp.*, 122 F. App'x

803, 806 (6th Cir. 2004).  In this case, the issues at the state and federal levels are identical and are

thus substantially similar.

The *Colorado River* Court first considered whether there was parallel jurisdiction between

the state and district court proceedings.  424 U.S. at 806–09.  When parallel jurisdiction exists,

*Colorado River* identified eight factors, none of which are dispositive, that "courts should

careful[ly] balance the important factors as they apply in a given case, with the balance heavily

weighted in favor of the exercise of jurisdiction."  *Romine v. Compuserve Corp.,* 160 F.3d 337,

340–41 (6th Cir. 1998).  The eight factors are as follows:

> (1) whether the state court has assumed jurisdiction over any res or property;
> (2) whether the federal forum is less convenient to the parties; (3) avoidance of
> piecemeal litigation; . . . (4) the order in which jurisdiction was obtained; . . .
> (5) whether the source of governing law is state or federal; (6) the adequacy of the
> state-court action to protect the federal plaintiff's rights; (7) the relative progress of
> the state and federal proceedings; and (8) the presence or absence of concurrent
> jurisdiction.

*Id.*; *see also Great Earth Cos. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002) (citing *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001)).  *Colorado River* abstention does not apply when "the federal court action is one for a declaratory judgment." *Boyd v. Martinez*, No. 22-6026, 2023 U.S. App. LEXIS 19993, at *9 (6th Cir. 2023).

### 2. *Wilton/Brillhart Abstention*

In *Wilton* and *Brillhart*, the petitioners brought actions seeking declaratory judgments in federal court and the district courts abstained from exercising jurisdiction because there were pending state court proceedings.  *Wilton*, 515 U.S. at 279–81; *Brillhart*, 316 U.S. at 492–94.  The Supreme Court held that abstention was proper in both cases because of the petitioners' requests for declaratory relief, holding that district courts have greater discretion to abstain from exercising jurisdiction where there is pending state litigation.  *Wilton*, 515 U.S. at 289–90; *Brillhart*, 316 U.S. at 494–96.

The Sixth Circuit has identified five factors to analyze when considering whether to exercise *Wilton/Brillhart* abstention.  *S2 Yachts v. RH Marine Corp.*, 855 F. App'x 273, 280 (6th Cir. 2021) (compiling the factors from *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (1984)).  These factors are:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata;
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Id*. at 280 (citing *Grand Trunk*, 746 F.2d at 326).  The factors are not assigned any particular weight; instead, the question on review is whether a district court has "'taken a good look at the

issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair.'"  *Boyd*, 2023 U.S. App. LEXIS 19993, at *10–11 (citing *Grand Truck*, 746 F.2d at 326). Additionally, federal court declaratory judgment actions are discretionary and federal courts should yield adjudication to lower courts when practical.  *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995)).

> **B.**    **Abstention Analysis**

Here, there is parallel jurisdiction between the state and federal court.  The state court's proceeding (NLC Litigation) is a breach of contract claim filed by Sparks against NLC.  Compl., *Sparks v. Nations Lending Corp.*, No. CV-22-959703 (Cuyahoga Cty. Ct. of Common Pl. Feb. 17, 2022).  The breach of contract claim in the NLC Litigation is identical to the breach of contract claim that is the subject of the declaratory judgment which NLC requests in the intervenor complaint before the Court.  (ECF No. 12, PageID #196; ECF No. 25, PageID #418–28).  Thus, *Colorado River* abstention does not apply because of the request for declaratory relief here.  *Boyd*, 2023 U.S. App. LEXIS 19993, at *9.  However, the Court must determine whether *Wilton/Brillhart* abstention is appropriate, based on the subject and nature of the declaratory judgment sought by NLC.  Reviewing the record, the Court finds that the balance of factors favors declining abstention and exercising jurisdiction.

> *1.      Whether the Declaratory Action Would Settle the Controversy.*

In federal court, when a party requests declaratory judgment on an issue raised in a parallel state court proceeding involving the same parties, resolving the federal case prevents re-litigation under the principle of res judicata.  *Byler v. Air Methods Corp.*, 823 F. App'x 356, 366 (6th Cir. 2020).  If the federal court resolution settles the controversy between the parties, exercising jurisdiction is favored.  *Id.*; *see also Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807,

814 (6th Cir. 2004) (finding that exercising federal jurisdiction is favored when the declaratory judgment action and parallel state action share the same parties and resolution would favor res judicata concerns).

The Court finds that a judgment in this case would fully settle the controversy.  In the intervenor complaint, NLC requests a declaration that: (i) NLC, Sparks, and Fitzhugh were all parties to the Agreement; (ii) Sparks and Fitzhugh were joint obligees; (iii) Fitzhugh's resignation triggered the termination of the Agreement for both Sparks and Fitzhugh; and (iv) NLC performed all duties owed to Sparks and Fitzhugh.  (ECF No. 24, PageID #406).  Both Sparks's counterclaim here and his complaint in the state court raise the same breach of contract claim.  Sparks contends that NLC breached the Agreement when it terminated Sparks's employment because of Fitzhugh's resignation; he asserts that the resignation did not trigger termination of the agreement between Sparks and NLC.  Compl., *Sparks v. Nations Lending Corp.*, No. CV-22-959703 (Cuyahoga Cty. Ct. of Common Pl. Feb. 17, 2022); (ECF No. 25, PageID #425–27).  Thus, resolving the intervenor complaint, and determining whether Fitzhugh's resignation permitted NLC to terminate the Agreement as to Sparks, will necessarily resolve Sparks's breach of contract claim.  Accordingly, factor (1) favors exercising jurisdiction.

> 2. *Whether the Declaratory Action Would Serve a Useful Purpose in Clarifying the Legal Relations in Issue.*

When a declaratory judgment would resolve a controversy in factor (1), the declaratory judgment will often clarify the legal issues within the case.  *United Specialty Ins. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019); *Boyd,* 2023 U.S. App. LEXIS 19993, at *13 ("The first two *Grand Trunk* factors are closely related, and courts often examine them in conjunction together."); *see also Scottsdale Ins. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008) (explaining that the second factor is "closely related to the first factor and is often considered in connection with

10

it"). "[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Flowers*, 513 F.3d at 557. Because resolving the instant declaratory action would settle the entire controversy between the parties as to the breach of contract claim, it necessarily follows that the legal relations as to that claim would be clarified. Thus, factor (2) favors exercising jurisdiction.

> 3. *Whether The Declaratory Remedy is Being Used for the Purpose of Procedural Fencing or to Provide an Arena for a Race for Res Judicata.*

Factor (3) determines whether "the party bringing the federal court declaratory judgment action has improper motives or is filing the federal action to start a race for res judicata." *Boyd,* 2023 U.S. App. LEXIS 19993, at *14 (citing *Cardinal Health, Inc. v. Nat'l Union Fire Ins. of Pittsburgh, PA*, 29 F.4th 792, 797 (6th Cir. 2022)). "Procedural fencing exists when a party in filing a declaratory action accomplishes something that the party could not do through removal." *Cas. Indem. Exch. v. High Croft Enters., Inc.*, 714 F. Supp. 1190, 1193 (S.D. Fla. 1989) (citing *Firemen's Ins. v. Riley*, 322 F. Supp. 349, 352 (W.D. Ky. 1971)). Procedural fencing generally refers to "a range of tactics that courts regard as unfair or unseemly," but the Sixth Circuit and courts within it have held that factor (3) is considered neutral in the absence of improper motive. *Cardinal Health*, 29 F.4th at 797(quoting *W. World Ins. v. Hoey*, 773 F.3d 755, 761 (6th Cir. 2014)); *see, e.g.*, *Boyd,* 2023 U.S. App. LEXIS 19993, at *15 (finding no evidence of procedural fencing when a declaratory judgment action was brought under a settlement agreement's forum selection clause). That said, when a party is pursuing procedural games, abstention is warranted. *Hoey*, 773 F.3d at 761. For example, courts have found motive of procedural fencing present when a federal interpleader action was filed after the state litigation has commenced. *Liffman v. Orangetree Props., LLC*, 2018 U.S. Dist. LEXIS 86645, at *3–4 (N.D. Ohio 2018) (finding that procedural fencing existed when an interpleading action was filed five months after the state court

litigation was filed and days before the interpleading party was to be deposed). Ultimately, this factor is meant to preclude jurisdiction for plaintiffs who appear to have filed a declaratory judgment action for the purpose of acquiring a favorable forum. *Flowers*, 513 F.3d at 558.

There are several facts which, when viewed together, might suggest that NLC engaged in procedural fencing. As noted by Sparks, the state court action had been in continuing litigation for nearly a year (11 months) and depositions of NLC executives had been requested before NLC moved to intervene in the instant federal action. (ECF No. 42, PageID #594); *Sparks v. Nations Lending Corp.*, No. CV-22-959703 (Cuyahoga Cty. Ct. of Common Pl.). This case had not progressed past the pleadings stage; meaning, the state court was closer to a conclusion of the proceedings before the intervenor complaint was filed. NLC also lacked the requisite diversity or federal question to remove Sparks's state court action, and the underlying breach of contract claim, to federal court.

But when NLC moved to intervene, it informed the state court it was moving to intervene in this case, moved the state court for a stay of the state court proceedings, and argued that a stay was necessary to avoid inconsistent rulings on the relevant contractual issues. Mot. to Dismiss, *Sparks v. Nations Lending Corp.*, No. CV-22-959703 (Cuyahoga Cty. Ct. of Common Pl. Jan. 12, 2023). The state court essentially condoned this procedural tact by granting a stay pending the outcoming of this action. Journal Entry, *Sparks v. Nations Lending Corp.*, No. CV-22-959703 (Cuyahoga Cty. Ct. of Common Pl. Feb. 17, 2023). There is no strong evidence before the Court to suggest that NLC was intending to engage in forum-shopping, or it would receive a more favorable ruling if the instant contractual dispute between NLC and Sparks was resolved in federal court. As a result, the Court concludes that factor (3) is neutral.

       4.      *Whether the Use of a Declaratory Action Would Increase Friction Between Our Federal and State Courts and Improperly Encroach Upon State Jurisdiction.*

"The fourth factor analyzes concerns about comity between federal and state courts." *Boyd,* 2023 U.S. App. LEXIS 19993, at *16 (citing *Hoey*, 773 F.3d at 761).  Three subfactors are considered under this factor:

(1) Whether the underlying factual issues are important to an informed resolution of the case;

(2) Whether the state trial court is in a better position to evaluate those factual issues than the federal court; and

(3) Whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Boyd,* 2023 U.S. App. LEXIS 19993, at *16; *Flowers*, 513 F.3d at 560.  The first subfactor focuses on "whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 561.  When a district court's findings may conflict with a state court's, "the exercise of jurisdiction would be inappropriate." *Id.* (citing *Traveler Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 273 (6th Cir. 2007)).

The first subfactor favors exercising jurisdiction.  As discussed above, if the Court exercised jurisdiction, the controversy would be resolved, and the state court litigation would be barred under res judicata.  There would be no conflict because the issues are identical, and the state court's factual findings are not necessary to resolve any questions raised in this declaratory action.  Thus, there is no concern about inconsistency between the forums and this favors jurisdiction.

The second subfactor favors abstention when questions of state law are unclear, as there is a general presumption that state courts are best equipped to decide state law ambiguities.  *Cole's Place*, 936 F.3d at 401.  When the state law is clear, subfactor two is neutral because the factor examines whether the state trial court is in a better position to evaluate factual issues than the

federal court.  *Id.*; *Boyd,* 2023 U.S. App. LEXIS 19993, at *16–17.  This case involves issues of state contract law: whether Fitzhugh's resignation triggered termination of the Agreement with respect to Sparks.  This is the underlying concern in both Sparks's and NLC's respective complaints.  This case involves an "ordinary application of state contract law principles and involves no novel question of state law nor an unusual application of factual issues that would make the state trial court a better forum" to resolve the dispute.  *Boyd,* 2023 U.S. App. LEXIS 19993, at *18 (finding that subfactor two favored resolution by the federal court because no novel issues of state law are present).  NLC's argument in the state court proceeding that the federal law would provide more guidance than the Ohio law is erroneous, as either court could aptly apply the state law.  Because the state law is clear and no novel issues are presented, the factor favors the exercise of jurisdiction.  *Boyd,* 2023 U.S. App. LEXIS 19993, at *18.

The third subfactor favors abstention when the issues involve state, rather than federal, law because state courts are best equipped to interpret its own laws.  *Flowers*, 513 F.3d at 561.  This case does not implicate any substantive federal law and solely involves the application of state law to settle a contract dispute.  Thus, subfactor three favors abstention.  *See Boyd*, 2023 U.S. App. LEXIS 19993, at *18 ("This third sub-factor weighs against an exercise of jurisdiction because the interpretation of contracts is resolved solely by interpreting state law.").

Altogether, the weight of subfactors caution the Court to exercise jurisdiction—with subfactors 1 and 2 supporting the exercise of jurisdiction and subfactor 3 weighing towards abstention.  Given that this case is a standard contract dispute and the issues before the Court do not involve a novel state law or factual issue, the Court finds that factor (4) weighs in favor of jurisdiction.

     5.    *Whether There Is an Alternative Remedy Which is Better or More Effective.*

Under factor (5), the Court determines whether there is an alternative remedy in the state court which is better or more effective. *Flowers*, 513 F.3d at 562. The Sixth Circuit has held that "an alternative remedy is 'better' than federal declaratory relief if state law offers a declaratory remedy or if coverage issues can be litigated in state-court indemnity actions." *Cole's Place*, 936 F.3d at 401. NLC could seek declaratory relief in the state court proceeding on the same merits as in NLC's intervenor complaint. *See* Ohio Rev. Code § 2721.12. The state court could apply and interpret its own laws in granting relief, thereby providing a better remedy than a federal application of equivalent law. *See Boyd,* 2023 U.S. App. LEXIS 19993, at *20–21 (finding federal declaratory relief inferior to state law). That said, it is arguable that declining jurisdiction and moving resolution of the relevant contract dispute back to state court would be slower and less efficient. Thus, factor (5) weighs slightly towards abstention.

     6.    *Balancing the Wilton/Brillhart Factors.*

There is no guideline for how the five factors should be balanced but the weighing "will depend on the facts of the case." *Boyd,* 2023 U.S. App. LEXIS 19993, at *21 (quoting *Cardinal Health, Inc.,* 29 F.4th at 801). We "frame our own review within the considerations of efficiency, fairness, and federalism, and review all of the relevant facts, both those that fit squarely within the *Grand Trunk* factors and those that do not." *W. World Ins. v. Hoey*, 773 F.3d 755, 760 (6th Cir. 2014). Factors (1), (2), and (4) weigh towards the exercise of jurisdiction, factor (3) is neutral, and factor (5) weighs slightly towards abstention. With only one factor weighing slightly in favor of abstention, the Court finds that, on balance, the *Wilton/Brillhart* factors support the exercise of jurisdiction.

III.     **CROSS-MOTIONS FOR JUDGMENTS ON THE PLEADINGS**

    A.     **Legal Standard**

After the pleadings are closed, a party may move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which is essentially a delayed motion to dismiss under Rule 12(b)(6) and is evaluated under the same standards.  *See Anders v. Cuevas*, 984 F.3d 1166, 1174 (2021).  Because the standards are the same, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Solo v. UPS Co.*, 819 F.3d 788, 793 (6th Cir. 2016 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). Judgment on the pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the Court concludes that the moving party is entitled to judgment as a matter of law. *Anders*, 984 F.3d at 1174.  In construing the pleadings, the Court accepts the factual allegations of the non-movant as true, but not unwarranted inferences or legal conclusions.  *Holland v. FCA US LLC*, 656 F. App'x 232, 236–37 (6th Cir. 2016) (citing *Gregory v. Shelby Cty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

In deciding a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)).  Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive.  *Id.* (quotation and citation omitted).  Conversely, "[m]ere labels and conclusions are not enough[.]"  *Engler*, 862 F.3d at

575.  Nor are facts that are "merely consistent with" liability.  *Bates*, 958 F.3d at 480 (quotation omitted).

###### B.  Spark's Motion for Judgment on the Pleadings

Sparks invokes the law-of-the-case doctrine and argues that he is entitled to judgment as a matter of law on the breach of contract counterclaim because the Court previously determined that Fitzhugh's resignation was not a basis for termination of the Agreement and Sparks's employment. (ECF No. 33, PageID #480–84).  For the law-of-the-case doctrine, Sparks cites two statements in the Court's prior order dismissing Sparks's complaint against Fitzhugh:

1.  "The Agreement's terms include bases for termination, and either of the Parties' resignation is not one of them"; and

2.  "Moreover, the Agreement does not state that the resignation of one party would result in the termination of the other."

(*Id.* at PageID #481–83 (citing ECF No. 28, PageID #459, 465)).  Sparks argues that these statements resolved the main dispute between the parties—as to whether the resignation of Fitzhugh caused or was a basis for termination of the Agreement and Sparks's employment—and now bind the Court.  (*See* ECF No. 33, PageID #481–84).  NLC responds that the law-of-the-case doctrine does not apply here because the statements reference by Sparks are dicta and therefore hold no precedential value.  (ECF No. 36, PageID #504–05).  The Court agrees with NLC.

The law-of-the-case doctrine upholds the general idea that courts should decline to redecide settled issues.  *Samons v. Nat'l Mines Corp.*, 25 F. 4th 455, 463 (6th Cir. 2022); *see also Arizona v. California*, 460 U.S. 605, 618 (1983) ("[T]he [law-of-the-case doctrine] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").  "The doctrine precludes a court from reconsideration of issues decided at an early stage of litigation, either explicitly or by necessary inference from the

disposition." *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1071 (6th Cir. 2014) (citing *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006)). "The purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (emphasis in original) (internal quotation marks omitted). This doctrine is meant to promote consistent rulings and judicial economy. *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 338–39 (6th Cir. 2016).

The law-of-the-case doctrine does not apply to a court's dicta.[6] *See generally Freed v. Thomas*, 976 F.3d 729, 738 (6th Cir. 2020); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 910 (6th Cir. 2001). Dicta is anything beyond what is necessary to reach a conclusion. *Freed*, 976 F.3d at 738 ("A 'holding' is [a] court's determination of a matter of law pivotal to its decision.") (internal quotation marks omitted). When one ground for a decision is the clear primary, then any secondary grounds are nonessential to determining an issues outcome. *Nat'l Satellite Sports*, 253 F.3d at 738. "Dictum, in other words, cannot be 'law of the case' because it is not 'law' at all." *United States v. Ike Obi*, No. 24-1482, 2025 U.S. App. LEXIS 5877, at *14 (6th Cir. Mar. 13, 2025).

The Court finds that the prior statements cited by Sparks are dicta. In the September 29, 2023 Opinion and Order granting Fitzhugh's motion to dismiss (ECF No. 9), the Court dismissed Sparks's breach of contract claim against Fitzhugh. (ECF No. 28, PageID #457–60). The Court found that there was no contract between Fitzhugh and Sparks because the Agreement solely created rights, duties, and obligations between the employer (NLC) and its employees (Sparks and Fitzhugh), not between Sparks and Fitzhugh. (ECF No. 28, PageID #457–59). Although the Court

---

[6] "Dictum" is the singular form of "dicta," which is a shortened version of "obiter dictum"—a Latin phrase meaning "something said in passing." Black's Law Dictionary (12th ed. 2024).

also stated that the resignation of either Sparks or Fitzhugh was not a basis for termination of the Agreement, (*Id.* at PageID #459), this statement is not necessary or essential to the Court's dismissal of Sparks's breach of contract claim against Fitzhugh.  The focus of the Court's analysis was on the lack of language binding Sparks and Fitzhugh to one another, not whether NLC had grounds to terminate Sparks's employment. (*Id.* at PageID #457–59).  The Court's statement about a party's resignation as it relates to termination of the Agreement is not essential to the Court's conclusion that there was no contract between Sparks and Fitzhugh, as removing the statement has no effect on that conclusion.  In other words, this statement was merely "said in passing." *See Ike Obi,* 2025 U.S. App. LEXIS 5877, at *14.  Thus, any language the Court used regarding resignation as a basis for termination is dicta.

Because the statements Sparks relies on are merely dicta and have no precedential or binding authority, the Court has not resolved whether Fitzhugh's resignation was a basis for terminating the Agreement and whether NCL breached the contract.  Thus, the law-of-the-case doctrine does not apply.  Sparks's motion for judgment on the pleadings (ECF No. 33) is **DENIED**.

### C.   NLC's Motion for Judgment on the Pleadings

NLC argues that it is entitled to judgment in its favor on Sparks's breach of contract counterclaim based on: (i) Sparks's judicial admissions; and (ii) the plain meaning of the Agreement. (ECF No. 37, PageID #536–43).  The Court will address each argument in turn.

#### 1.   Judicial Admissions

NLC argues that Sparks's breach of contract counterclaim fails as a matter of law because his theory of liability is that NLC caused the termination of the Agreement, but Sparks admitted in his briefing before the Court that Fitzhugh, through his resignation, caused the termination of

the Agreement rather than NLC.  (ECF No. 37, PageID #536–40).  NLC cites six statements in

Sparks's opposition to Fitzhugh's motion to dismiss the amended complaint (ECF No. 10), which

was filed before NLC intervened in this action:

1. "By the terms of the Agreement, Sparks and Fitzhugh shared net profits here.
   *Each was evidently capable of binding the business entity here because
   Fitzhugh's resignation from NLC also terminated Sparks's relationship with
   NLC.*  Thus, Count Two of Plaintiff's Complaint should not be dismissed."
   [(ECF No. 10. PageID #172).]

2. "*And Fitzhugh clearly had the ability to bind Sparks within the scope of their
   partnership, as Fitzhugh's resignation caused Sparks's termination from
   NLC.*"  [(ECF No. 10, PageID #171).]

3. "Good faith performance means 'faithfulness to an agreed common purpose and
   consistency with the justified expectations of the other party.'  Sourial v.
   Nationwide Mut. Ins. Co., 2018-Ohio-2528, ¶ 31, 116 N.E.3d 761, 771 (Ct.
   App.).  *Fitzhugh's cutting Sparks out of NLC and appropriating his
   commissions was not faithful to the parties' agreed common purpose.*"  [(ECF
   No. 10, PageID #167).]

4. "Fitzhugh and NLC clearly acted as if Fitzhugh and Sparks were some type of
   joint entity under the Agreement; *they planned Fitzhugh's resignation so to
   terminate the Agreement and renegotiate Fitzhugh's compensation. If Fitzhugh
   and Sparks were just two independent employees of NLC, how would 'Justin
   Fitzhugh resign[ing] his employment with NLC have the effect of terminat[ing
   Sparks's] employment with NLC*?"  [(ECF No. 10, PageID #170).]

5. "*Sparks is not contesting Fitzhugh's right to resign from NLC, he is contesting
   Fitzhugh's deceitful sham resignation and rehire. Planning the disengagement
   of his partner from their business in that fashion violated Fitzhugh's fiduciary
   duties such as his obligation to 'refrain from competing with the partnership in
   the conduct of the partnership business before the dissolution of the
   partnership.*"  [(ECF No. 10, PageID #171).]

6. "*Sparks's FAC more than amply charges that Fitzhugh's intent was to interfere
   with his employment contract. He alleges that '[Fitzhugh's] resignation was a
   sham. It was constructed and executed, with NLC's knowledge, to extricate
   Fitzhugh and NLC from the Agreement so that those parties could renegotiate
   a new compensation structure without consideration of their contractual
   obligations to Sparks.' FAC, ECF No. 6, ¶ 31. He alleges further that
   'Fitzhugh's sole motivation in his sham resignation was to supply a basis… for
   NLC to end its contractual relationship with Sparks.' Id. ¶ 32. And, as Sparks*

> *also alleges, Fitzhugh's plan was carried into fruition.*"  [(ECF No. 10, PageID #173).]

(ECF No. 37, at PageID #539–40) (emphasis added by NLC).  Based on these "six (6) written judicial admissions," NLC contends that Sparks admitted that Fitzhugh's resignation caused the termination of the Agreement; therefore, Sparks is bound by these judicial admissions and is barred from asserting his only claim of liability against NLC.  (*Id.* at PageID #539–40).  The Court disagrees.

The Sixth Circuit has observed that "under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *Ferguson v. Neighborhood Hous. Servs.*, 780 F.2d 549, 551 (6th Cir. 1986) (quoting *Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir. 1980)) (internal quotation marks omitted).  "Judicial admissions typically concern only matters of fact." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 394 (6th Cir. 2007) (cleaned up) (citation omitted).  That said, judicial admissions can also concern mixed questions of fact and law. *See Kentucky Indus. Hemp, LLC v. Teterboro Partners, LLC*, 2024 U.S. App. LEXIS 13846, at *13–14 (6th Cir. 2024) (citing *Meyer v. Berkshire Life Ins.*, 372 F.3d 261, 264–65 (4th Cir. 2004) (holding that a judicial admission can "release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law.")).  The Court has discretion to consider whether a statement made in a parties' brief qualifies as a judicial admission. *United States v. Burns*, 109 F. App'x 52, 58 (6th Cir. 2004).  "In this circuit, 'in order to qualify as judicial admissions, an attorney's statements must be deliberate, clear, and unambiguous." *Id.* (quoting *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997))

First, the statements in Sparks's opposition brief that NLC relies on do not qualify as judicial admissions.  The parties do not dispute the core facts of this case.  They agree that Fitzhugh resigned, NLC sent a letter to Sparks stating that the Agreement was terminated because of that

resignation, and Sparks's employment with NLC was terminated. Under Ohio law, the determination of whether a certain act or conduct constitutes a breach of contract is a question of law when the facts are undisputed. *Maghie & Savage, Inc. v. P.J. Dick Inc.*, 2009-Ohio-2164, ¶29 (Ohio Ct. App. 2009); *Little Eagle Props. v. Ryan*, 2004-Ohio-3830, ¶17 (Ohio Ct. App. 2004); *cf. Retail Ventures, Inc. v. Nat'l Union Fire Ins. of Pittsburgh, Pa.*, 691 F.3d 821, 826 (6th Cir. 2012) (holding that contract interpretation is a question of law in diversity actions governed by Ohio law). Whether Fitzhugh's resignation caused the termination the Agreement, or whether NLC had a right to terminate the Agreement based on that resignation, are matters of contractual interpretation and pure questions of law. Thus, they do not qualify as judicial admissions.

Second, even if the statements referenced by NLC could qualify as judicial admissions, the Court does not find them to be an admission or statement that Fitzhugh's resignation either terminated the Agreement under its terms or permitted NLC to terminate the Agreement. Nothing about the cited statements, or Sparks's opposition brief as a whole, shows a clear, deliberate, and unambiguous statement admitting that Fitzhugh's resignation caused the Agreement to terminate like NLC argues. The statements cited by NLC do not necessarily stand for the proposition that Fitzhugh's resignation was a proper ground for termination. Any language that supports the reading that NLC urges the Court to follow also coincides with language supporting Sparks's primary contention in the amended complaint and his opposition to Fitzhugh's motion to dismiss: NLC and Fitzhugh conspired together to terminate Sparks's employment and used Fitzhugh's resignation for that purposes. For example, Sparks does state "Fitzhugh's resignation caused Sparks's termination from NLC[,]" and "Fitzhugh's resignation from NLC also terminated Sparks' relationship with NLC." (ECF No. 10, PageID #171–72). Yet, in the same breath, Sparks also states "[Fitzhugh and NLC] planned Fitzhugh's resignation so as to terminate the Agreement",

"Sparks is not contesting Fitzhugh's right to resign from NLC, he is contesting Fitzhugh's deceitful sham resignation and rehire", and "[Sparks] alleges that [Fitzhugh's] resignation was a sham . . . constructed and executed, with NLC's knowledge, to extricate Fitzhugh and NLC from the Agreement[.]"  (*Id.* at PageID #170–73).

NLC urges the Court to grant their motion on isolated lines of text rather than viewing these statements in their full context.  With the full context in mind, there is no deliberate, clear, or unambiguous statement that Fitzhugh's resignation terminated the Agreement.  For these reasons, Sparks's prior statements in his prior opposition brief do not qualify as judicial admissions and NLC's request for judgment on the pleadings on this ground is **DENIED**.

### 2.  *Merits Analysis – Plain Meaning of the Agreement*

NLC argues that it is entitled to judgment on the pleadings because Fitzhugh's resignation terminated the Agreement under the plain meaning of the Agreement.  (ECF No. 37, PageID #540–43).  NLC contends that the Agreement's plain language shows that Sparks and Fitzhugh were joint obligees because: (i) under the Agreement, NLC "owed the same exact performance to Sparks and Fitzhugh with no distinction whatsoever"; (ii) NLC owed a specific obligation to Sparks and Fitzhugh if either resigned, based on the "Tail Compensation" provision in Section 14; and (iii) both Sparks and Fitzhugh had the right to discharge NLC from continuing obligations to Sparks and Fitzhugh.  (*Id.*).  Sparks responds that the plain terms of the Tail Compensation provision contemplate the termination of either Sparks or Fitzhugh while the other remains employed and do not manifest an intention that either individual could extinguish NLC's obligations to the other.  (ECF No. 40, PageID #579–82).  Sparks also argues that he is entitled to judgment under the plain terms of the Agreement because it explicitly outlines only five

circumstances when NLC may terminate the employment of Sparks or Fitzhugh, with the resignation of either person not included.  (*Id,* at PageID #581).

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach."  *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (citing *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)).  The parties dispute centers on whether Fitzhugh's resignation is a basis for terminating the Agreement.  This will determine whether NLC breached the Agreement by ending Spark's employment after Fitzhugh resigned from NLC.  "Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court."  *Savedoff*, 524 F.3d at 763 (citations omitted).  "[A] contract is 'unambiguous' if a reviewing court 'can give a definite legal meaning' to the contract's terms."  *United States v. Ohio*, 787 F.3d 350, 353 (6th Cir. 2015) (quoting *Westfield Ins. v. Galatis*, 100 Ohio St. 3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, 1261 (Ohio 2003)).  To determine whether a contract is unambiguous, a court must start with the contract's language by giving the words their "plain and ordinary meaning, unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."  *Wilkerson v. Am. Fam. Ins.*, 997 F.3d 666, 668 (6th Cir. 2021).  A contract's language is ambiguous when "the provision at issue is susceptible of more than one reasonable interpretation."  *Id*.  Only where a contract is ambiguous may the court look to extrinsic evidence to ascertain the parties' intent.  *Savedoff*, 524 F.3d at 763; *Ohio*, 787 F.3d at 354.

The Court finds that the language of the Agreement is at best ambiguous and both parties' interpretations of the Agreement are reasonable at this stage of the proceeding.  NLC primarily

cites the so-called "Tail Compensation" provision in Section 14 of the Agreement. According to NLC, it demonstrates that, under the clear terms of the Agreement, Sparks and Fitzhugh agreed that the resignation of either party would terminate the Agreement, as well as the employment of both parties, and NLC could wind up the relationship. (ECF No. 37, PageID #542–43). In other words, NLC argues that the Agreement unambiguously provides that the resignation of either Sparks or Fitzhugh would terminate the Agreement. Section 14 is triggered "[u]pon termination of the employment of either Sparks and/or Fitzhugh" and sets forth a specific "Tail Compensation" to be "divided equally and paid to Sparks and Fitzhugh" over 24 months. (ECF No. 24-1, PageID #412). This provision also states that both Sparks and Fitzhugh will be paid on a 1099 basis following the termination of their employment with NLC. (*Id.*) NLC argues that the Section 14 being triggered by the termination of either Sparks *or* Fitzhugh and the Tail Compensation being paid to both Sparks *and* Fitzhugh shows that NLC had a joint agreement with both Fitzhugh and Sparks, not one or the other. (ECF No. 37, PageID #542–43). While this is a reasonable interpretation of the Agreement, it is not the only one.

As Sparks argues, Section 14 does not explicitly state that the termination of the employment of either Sparks or Fitzhugh would result in the termination of employment for the other. (ECF No. 40, PageID #579–83). Sparks contends that Section 14 contemplates that "the termination of just one of either Sparks or Fitzhugh, with the other remaining employed." He notes that this provision's reference to the termination of "either Sparks and/or Fitzhugh" would make no sense if the termination of one automatically terminated the other. (*Id.* at PageID #580). The Court finds this to be a reasonable interpretation as well. Sparks's argument that the Agreement contemplates the continued employment of only one employee is further bolstered by other portions of the Agreement, including the very next section of the Agreement. Section 15 of

the Agreement states: "This Agreement, and/or the employment of Spark, or Fitzhugh cannot be terminated by NLC except for the following [five reasons.]"  (ECF No. 24-1, PageID #412).  This provision reads that NLC has the right/ability, under certain circumstances, to terminate the Agreement as a whole, terminate the employment of both Sparks and Fitzhugh, or terminate just one of the two employees.  Thus, a portion of the Agreement reflects an intention/ability for Sparks or Fitzhugh to continue their employment with NLC after the resignation/termination of the other. Nowhere in Section 15 does it state that NLC may terminate the employment of one if the employment of the other is terminated; nor does it say such termination is automatic.

 Moreover, Section 14 states that "[p]ayment(s) to Sparks *and* Fitzhugh after termination of *their* employment shall be made and treated on a 1099 basis," which can be read to mean that: (i) this provision only activates once both Sparks and Fitzhugh's employment with NLC has been terminated; or (ii) the 1099 basis only applies to the specific employee who has been terminated. (ECF No. 26-1, PageID #519) (emphasis added).  As Sparks argues, nowhere in Section 14 does it state that if one of Sparks or Fitzhugh is terminated then payment to *both* Sparks and Fitzhugh would be made on a 1099 basis.  (ECF No. 40, PageID #580).

Accordingly, the Agreement's language is, at best, ambiguous as to whether the resignation of one employee automatically terminates the employment of the other.  With two valid and reasonable readings of the same Agreement, the court must then turn to extrinsic evidence to determine the party's true intentions. *Tackett v. M&G Polymers USA, LLC*, 811 F.3d 204, 208– 09 (6th Cir. 2016) (citing *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 443 (2015) (J. Ginsburg, concurring)).  It is generally inappropriate for the Court to interpret an ambiguous contract at the pleadings stage to resolve a pending motion to dismiss. *See Miranda v. Xavier Univ.*, 594 F. Supp. 3d 961, 971 (S.D. Ohio 2022) ("Generally, interpretation of contracts—

especially ambiguous ones—is a question of fact inappropriate for resolution on a motion to dismiss.") (collecting cases); *Nashville Underground, LLC v. AMCO Ins.*, 523 F. Supp. 3d 1006, 1012 (M.D. Tenn. 2021) (recognizing case law which indicates "that it is generally inappropriate to interpret a contract on a motion to dismiss").  Based on the ambiguous nature of the Agreement as to the issue before the Court, further discovery and extrinsic evidence is required to determine the true intentions of both parties.  Thus, the underlying breach of contract claim is better left for a determination after the parties have engaged in discovery and seek summary judgment.

Accordingly, NLC's motion for judgment on the pleadings (ECF No. 37) is **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Sparks's motion for judgment on the pleadings (ECF No. 33) and NLC's motion for judgment on the pleadings (ECF No. 37).

**IT IS SO ORDERED.**

Date: April 4, 2025

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**

27